**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **L.S.**

**No. 21-0358** (Hardy County 20-JA-4)

**MEMORANDUM DECISION**

Petitioner Mother M.L., by counsel Jeffrey N. Weatherholt, appeals the Circuit Court of Hardy County's April 6, 2021, order terminating her parental rights to L.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Marla Zelene Harman, filed a response on behalf of the child in support of the circuit court's order. Respondent C.W., the legal guardian of a child not at issue in this appeal, by counsel Royce B. Saville, filed a summary response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating her parental rights upon erroneous findings and insufficient evidence and in denying her post-termination visitation with the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2020, the DHHR filed an abuse and neglect petition alleging that petitioner abused and neglected L.S.[2] because the six-week-old child suffered bruising on both collar bones; oral trauma; a cut lip; bilateral bruising on both ears; and petechial bruising on the nose, eyes, and forehead in various stages of healing. Hospital staff concluded that the injuries were not consistent

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The petition concerned additional children who are not at issue in this appeal.

with the statement from the parents that the child fell while having her diaper changed. According to the record, petitioner alleged that she was outside smoking a cigarette when the child was injured. As a result of her injuries, the child was flown to Ruby Memorial Hospital for treatment. The day after the child was taken to the hospital, law enforcement contacted CPS about the father having overdosed in the home. When EMS responded to the scene and inquired about the cause of the overdose, petitioner removed a syringe from her bra and provided it to the EMS personnel. Following the petition's filing, petitioner waived her preliminary hearing.

The circuit court held a series of adjudicatory hearings over the next several months, culminating in a hearing in June of 2020. The DHHR presented evidence from multiple individuals, including Dr. Kamakshya Patra, a pediatric specialist who treated L.S. at Ruby Memorial. Dr. Patra testified that the child's injuries were not consistent with a single fall, due to the nature, differing ages, and location of the bruises; were not consistent with the parents' explanations; and were, instead, the result of a "significant amount of force" and unexplained, nonaccidental trauma. The court found that petitioner and the father were the child's caretakers at the time the injuries were sustained and failed to provide a reasonable explanation for the child's nonaccidental injuries. As such, the court adjudicated petitioner of abusing and neglecting the child.

In July of 2020, the circuit court terminated the father's parental rights.[3] At that time, the court deferred ruling on disposition for petitioner "given that she was not immediately present at the time of the injuries inflicted upon" L.S. Later that same month, the court granted petitioner an improvement period. Over the following months, the court reviewed petitioner's progress in the improvement period and found her to be in compliance with her case plan.

On February 17, 2021, the court held a review hearing, during which petitioner moved to have custody of the child returned to her. The court deferred ruling on this motion upon objection by the DHHR. However, the day after this hearing, petitioner requested that the father come to her home to retrieve clothing. During the exchange, the father physically attacked petitioner. The court addressed this incident at the dispositional hearing in March of 2021. According to the circuit court, this incident demonstrated petitioner's inability to protect herself, let alone a young child. The circuit court noted that after one year of petitioner's participation in services, she "failed to garner the judgment to stay away from the individual who harmed her child." The court further expressed concern that this incident occurred just one day after petitioner asked for the court to return L.S. to her custody. As such, the court found that petitioner could not safely assume custodial responsibility of the child, especially in light of her failure to obtain a domestic violence protective order against the father and her expressed intention not to press charges against him for the incident of domestic violence. The court further found that continuation in the home was contrary to the child's welfare because she would be in danger if returned. The court recognized that petitioner successfully participated in many aspects of her case plan, but found that despite these efforts, petitioner failed to materially alter or modify her approach to parenting and continued to exhibit poor judgment.

---

[3]The father appealed, and this Court affirmed the termination of his parental rights. *See In re L.S. and A.S.*, No. 20-0640, 2020 WL 7260698 (W. Va. Dec. 10, 2020)(memorandum decision).

In further support of these findings, the court noted that petitioner was again pregnant at the time of the dispositional hearing by a man that she indicated was "a felon convicted of drug conspiracy." According to the court, petitioner "fail[ed] to see the overall import of co-parenting with this individual for the next 18 years." Based on this evidence, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the child's welfare. As such, the court terminated petitioner's parental rights and referred the matter of post-termination visitation to the multidisciplinary team ("MDT"). During the subsequent MDT meeting, the court terminated petitioner's post-termination visitation. Petitioner then filed a motion to reconsider this termination. At a permanency hearing in April of 2021, the court denied petitioner's motion to reconsider the termination of post-termination visitation. During this hearing, petitioner admitted that the father had broken into her home multiple times, including after the dispositional hearing. Despite this ongoing conduct, petitioner failed to take steps to ensure that the child would be protected from him if returned to her care. It is from the dispositional order that petitioner appeals.[4]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights upon several erroneous findings. This includes the court's findings that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future, that petitioner was unwilling or unable to provide adequately for the child's needs, and that continuation in the home was contrary to the child's welfare. According to petitioner, these findings were erroneous because she successfully attended and completed multiple services, including substance abuse treatment, parenting and adult life skills classes, and counseling. Petitioner also points to other improvements, such as her maintenance of stable housing, in arguing that these findings constitute error. Essentially, petitioner argues that the evidence shows that she

---

[4]The permanency plan for L.S. is adoption in the current foster home.

successfully completed her improvement period, and, therefore, the court's ruling lacks a basis in the record. We do not agree.

This Court has addressed situations in which a parent substantially complies with the terms and conditions of an improvement period yet fails to show sufficient improvement to warrant the return of a child to their care on several occasions. Specifically, we have set forth the following in similar circumstances:

> While the circuit court acknowledged the mother's substantial compliance with the terms and conditions of her improvement period, we have recognized that "'it is possible for an individual to show "compliance with specific aspects of the case plan" while failing "to improve . . . [the] overall attitude and approach to parenting." *W.Va. Dept. of Human Serv. v. Peggy F.*, 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990).'" *In re Jonathan Michael D.*, 194 W.Va. 20, 27, 459 S.E.2d 131, 138 (1995). Moreover, "'[t]he assessment of the overall success of the improvement period lies within the discretion of the circuit court . . . "regardless of whether . . . the individual has completed all suggestions or goals set forth in family case plans."' *In Interest of Carlita B.*, 185 W.Va. 613, 626, 408 S.E.2d 365, 378 (1991)." *In re Jonathan Michael D.*, 194 W.Va. at 27, 459 S.E.2d at 138.

*In re B.H.*, 233 W. Va. 57, 65, 754 S.E.2d 743, 751 (2014). Further, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." *Id.* at 58, 754 S.E.2d at 745, Syl. Pt. 4. As such, while we acknowledge petitioner's overall compliance in the proceedings below, this is insufficient to entitle her to relief.

What petitioner fails to recognize is that the circuit court addressed her compliance, but found that she failed to meaningfully correct her overall approach to parenting and, specifically, that she continued to pose a threat to the child's safety because of her ongoing display of poor judgment. Particularly troubling to the court was the fact that just one day after petitioner sought the return of L.S. to her custody, petitioner requested that the father—whose rights to the child had been terminated for his failure to acknowledge that the child suffered extensive nonaccidental injuries while in his care—come to her residence. On appeal, petitioner presents this decision as "the right thing to do" because the father had requested his belongings. Petitioner would have this Court believe that the only alternative to this decision was to throw the father's belongings away, while ignoring the reality that she could have facilitated the transfer of his property in any number of other ways. During the father's visit to the home, he engaged in physical violence against petitioner, supporting the circuit court's fears that petitioner would once again be unable to protect the child from harm. Even more concerning is the circuit court's finding that petitioner failed to obtain a domestic violence protective order against the father and expressed a desire not to press charges against him, reinforcing the court's determination that petitioner's poor judgment would result in continued danger to the child.

The circuit court also noted that petitioner was pregnant at disposition and acknowledged that the father was a felon with a drug conspiracy conviction. As in the circuit court, petitioner

asserts on appeal that she intended to raise the child on her own and argues that her decision to have a child cannot be held against her. We find, however, that petitioner's focus on the pregnancy alone is misplaced and misinterprets the circuit court's stated concerns. The circuit court did not point to petitioner's pregnancy by itself as supportive of termination of her parental rights. Rather, the court noted that her choice to have a child with yet another potential threat to L.S.'s wellbeing only reinforced the concerns that her poor judgment would present an ongoing threat to the child's wellbeing. We agree, and find that this evidence was sufficient to support the findings petitioner challenges on appeal. According to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." As set forth above, the court found that petitioner was unable to correct the most important condition of abuse and neglect at issue—her inability to protect L.S. Further, this same evidence established that petitioner was unable to adequately provide for the child's safety and that termination was therefore necessary to protect the child's wellbeing.

On appeal, petitioner also argues that termination of her rights was in error because her visits with L.S. went well. In support, petitioner relies on the following: "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). This reliance is misplaced, however, as the level of interest in visiting a child is only one factor related to the potential to improve. Here, petitioner demonstrated over a significant period that she was simply unable to improve, given her continued inability to demonstrate appropriate judgment and the associated risk to the child's wellbeing.

Because we find that there was sufficient evidence to support the findings petitioner challenges on appeal, she is entitled to no relief in regard to termination of her parental rights. According to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental rights upon finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and when termination is necessary for the child's welfare. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error.

Lastly, petitioner argues that she should have been entitled to post-termination visitation with the child because her visitation supervisor indicated that petitioner interacted well with the

child during visits and that the child appeared to enjoy them. We find, however, that this is insufficient to entitle petitioner to relief. As this Court has explained,

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). On appeal, petitioner fails to explain why continued contact would not be detrimental to the child's wellbeing given the circuit court's concerns about her inability to protect L.S. While it may be true that the circuit court heard evidence of petitioner's bond with the child and initially believed that continued visitation could be appropriate, the record shows that the ultimate denial of post-termination visitation was made in the child's best interests. As such, we find no error in the denial of post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 6, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton